**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No.<br>2:18-mn-2873-RMG |

| | |
|---|---|
| CITY OF CAMDEN, CALIFORNIA WATER SERVICE COMPANY, CITY OF BENWOOD, CITY OF BROCKTON, CITY OF DELRAY BEACH, CITY OF FREEPORT, CITY OF SIOUX FALLS, CITY OF SOUTH SHORE, CORAOPOLIS WATER & SEWER AUTHORITY, DALTON FARMS WATER SYSTEM, MARTINSBURG MUNICIPAL AUTHORITY, TOWNSHIP OF VERONA, AND VILLAGE OF BRIDGEPORT, individually and on behalf of all others similarly situated,<br><br>        *Plaintiffs,*<br><br>   -*vs*-<br><br>BASF CORPORATION, individually and as successor in interest to Ciba Inc.<br><br>        *Defendants.* | **CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs CITY OF CAMDEN, CITY OF BENWOOD, CITY OF BROCKTON, CITY OF SIOUX FALLS, CALIFORNIA WATER SERVICE COMPANY, CITY OF DELRAY BEACH, CITY OF FREEPORT, CITY OF SOUTH SHORE, CORAOPOLIS WATER & SEWER AUTHORITY, DALTON FARMS WATER SYSTEM, MARTINSBURG MUNICIPAL AUTHORITY, TOWNSHIP OF VERONA, AND VILLAGE OF BRIDGEPORT (collectively "proposed Class Representatives"), by and through their attorneys Baron & Budd P.C., Douglas

& London P.C., Napoli Shkolnik and Motley Rice LLC (collectively "proposed Class Counsel"), for their Class Action Complaint against Defendant BASF Corporation, individually and as successor in interest to Ciba Inc. ("BASF"), allege on behalf of themselves and others similarly situated as follows:

## INTRODUCTION AND BACKGROUND

1.      The proposed Class Representatives are public water entities and/or private companies that provide drinking water to the public ("Public Water Systems"), and bring this class action lawsuit on behalf of themselves and other similarly situated Public Water Systems (the "proposed Class Members") arising from the widespread contamination of drinking water supplies by per- and polyfluoroalkyl substances ("PFAS"), a family of chemical compounds that includes perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS").

2.      The proposed Class Representatives and proposed Class Members supply drinking water to tens of millions of individuals and businesses nationwide. The proposed Class Representatives own and/or operate public drinking water supply systems, which include groundwater supply wells and surface waters, that supply water to residences, schools, and businesses. These drinking water supplies have been contaminated with PFAS.  The proposed Class Representatives seek to represent all similarly situated owners and/or operators of drinking water supplies that have likewise been contaminated with PFAS.

3.      BASF is the successor-in-interest of Ciba Inc. (f/k/a Ciba Specialty Chemicals Corporation).

4.      Ciba Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFAS, including but not limited to PFOA, and/or its chemical precursors for use in many products, including aqueous film-forming foam ("AFFF").

5.     AFFF is a type of water-based foam that was first developed in the 1970's to extinguish hydrocarbon fuel-based fires.

6.     AFFF is a Class-B firefighting foam. It is mixed with water and air and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

7.     AFFF is manufactured by combining several ingredients, including hydrocarbon surfactants and fluorosurfactants. When mixed with water and air, the resulting solution produces an aqueous bubbly film that spreads across the surface of hydrocarbon fuel. The combination of the foam blanket and film provides fire extinguishment and is the source of the designation aqueous film-forming foam.

8.     AFFF can be made without the fluorosurfactants that contain PFOA and/or its precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA and/or its precursor chemicals into the environment.

9.     Defendant BASF designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFAS, including PFOA, and/or its chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed of at, near or within the vicinity of the drinking water supplies of the proposed Class Representatives and proposed Class Members, and entered the environment, migrated through the soil, sediment, stormwater, surface water, and groundwater, thereby contaminating or threatening to contaminate the drinking water supplies of the proposed Class Representatives and proposed Class Members.

10.    Defendant was aware or should have been aware that the fluorosurfactants it designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products and foreseeably end up in Plaintiffs' drinking water supplies.

11.    The proposed Class Representatives bring this action, individually and on behalf of all others similarly situated, against Defendant to recover any and all relief with respect to the installation, maintenance and operation of, and cost associated with, any kind of treatment, filtration, remediation, testing, or monitoring of the ongoing contamination of their drinking water supplies proximately caused and/or created by Defendant's products containing PFAS, as well as any and all damages available as a result of the actions and/or inactions of Defendant, and to ensure that Defendant, as the responsible party, bears such expense, rather than the proposed Class Representatives and proposed Class Members.

12.    The proposed Class Representatives seek to recover the substantial costs necessary to protect the public and restore their damaged drinking water supplies as well as those of other similarly situated Public Water Systems. These costs include, but are not limited to, the costs of testing and monitoring water supplies for PFAS contamination; the costs of designing, constructing, installing, operating, and maintaining the treatment facilities and equipment required to comply with state and federal drinking water regulations and to remove PFAS from the drinking water supplied to the public; and/or the costs of securing alternative sources of water as a result of PFAS contamination.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 (d) because there is minimal diversity of citizenship among the parties, there are more than

100 members of the proposed Class, and the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

14.    Venue is appropriate in this District pursuant to the Order of the Judicial Panel on Multidistrict Litigation which transferred and centralized all related action in this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C § 1407.  In addition, venue is also applicable in this district, pursuant to 28 U.S.C §1391 because a substantial part of the events and omissions giving rise to the claims asserted occurred in this district.

15.    Case Management Order No. 4 authorizes direct filing of the claim to this judicial district.

## PARTIES

### A.  Proposed Class Representatives for the Proposed Class

16.    **Plaintiff City of Camden ("Camden")** is located in Camden County, New Jersey and a citizen of the State with a population of approximately 72,000. Camden provides drinking water to all residents of the City of Camden, with approximately 13,666 metered accounts.

17.    Camden's system consists of 19 wells that draw from the lower Potomac Raritan-Magothy Aquifer. The system has a maximum pumping rate of 27,600 gallons per minute. The 19 wells are spread across four wellfields throughout the City of Camden.  As of May 2023, 17 of the 19 wells were active and, of these 17 active wells, 10 have been taken out of service due to PFAS contamination, which is believed to have resulted from firefighting training activities by the City of Camden's fire department.

18.    Camden's system utilizes two treatment plants, which treat ground water for iron and manganese removal by oxidation, settling and filtration. Volatile organic chemicals are removed via packed tower aeration. All treated water is disinfected with chlorine to maintain water quality in the distribution system.  Fifteen of the groundwater wells are treated at the

Morris-Delair Water Treatment Plant and two wells are treated at the Parkside Water Treatment Plant. Aside from PFAS, no other regulated contaminants have been detected in Camden's drinking water supply at levels above the relevant state or federal Maximum Contaminant Levels ("MCLs").

19.     PFAS were first detected in Camden's water supply in January 2018.  The highest level of PFOA detected was 163.9 parts per trillion ("ppt") and the highest level of PFOS detected was 75.2 ppt.

20.     In January 2020, Camden removed six wells with significantly elevated levels of PFAS from service. Continued PFAS testing in 2020 revealed additional contamination and four other wells were taken off-line.

21.     With these wells off-line, it was necessary to supplement Camden's water supply for the following several years until adequate treatment could be installed to treat the water from the Morris and Delair wellfields that contain PFAS. Camden therefore entered into a 10-year Commodity Demand Water Supply Agreement ("CDWSA") with New Jersey-American Water to meet these needs. Camden purchased 3.0 million gallons per day ("MGD") in 2021 and 2.5 MGD in 2022 and is paying approximately $300,000 per month for the purchased water.

22.     Camden has installed a granulated activated carbon ("GAC") filtration system to remove PFAS at the Parkside Treatment Plant and is in the planning phase for the implementation of PFAS treatment at the Morris-Delair Plant.

23.     **Plaintiff California Water Service Company ("Cal Water")** is a California public utility water corporation incorporated under the laws of the State of California, with its principal place of business in San Jose, California.  Cal Water is a Citizen of California.

24.     Cal Water owns and operates public drinking water systems that provide potable drinking water to residents and businesses in various locations throughout California, including but not limited to Bakersfield, Bakersfield-North Garden, Marysville, Salinas, Selma, South San Francisco, Stockton, Tulco and Visalia. Each of these systems is subject to the rules and regulations of the California Public Utilities Commission, and with respect to each system, Cal Water has a certificate of convenience and necessity pursuant to which Cal Water has a duty to provide water service.

25.     Each of these water systems includes, among other elements, drinking water production wells that draw from groundwater aquifers and associated pumping, storage, treatment and distribution facilities and equipment. Among other things, Cal Water has the right to appropriate and use groundwater for drinking water supplies from such wells.

26.     Cal Water's water supply is contaminated with PFAS.

27.     **Plaintiff City of Benwood ("Benwood")** is located in Marshall County, West Virginia, and a citizen of the State with a population of approximately 1,245 residents. Benwood's water system provides water services to a population of approximately 1,510.  Benwood's water supply comes from two groundwater wells. The source wells are located in the Alluvial Valleys Area of West Virginia and the total raw water production is approximately 175,000 gallons per day ("GPD").

28.     Benwood first became aware of PFAS contamination through testing conducted by the United States Geological Survey between 2019 and 2021. Further testing was conducted by the State of West Virginia in 2022. Over the course of testing, PFAS, including PFOS, PFOA, PFHxS, and PFBS, were detected in Benwood's water system.  PFOS results ranged from 8.56 to 14 ppt and PFOA was 5.3 ppt.

29.     **Plaintiff City of Brockton ("City of Brockton")** is located in Plymouth County, Massachusetts, and a citizen of the State, which owns and operates the Brockton Water Department ("BWD").  The BWD is a Public Water System currently serving approximately 23,000 active water service accounts, over 3,000 hydrants and over 5,500 valves in the City of Brockton, Towns of Avon, Hanson, Halifax, Pembroke, and Whitman.

30.     The BWD obtains water from Silver Lake and the Brockton Reservoir.  Silver Lake is the primary supply (88.25% of total) and is located approximately 15 miles southeast of the center of Brockton. Over 50% of the watersheds are either owned by the City of Brockton or in conservation protection.  Water from the lake is treated at the Silver Lake Water Treatment Plant ("SLWTP") and is transmitted through two 24-inch diameter mains to Brown's Crossing Pumping Station.  After Brown's Crossing, the water is pumped through one 36-inch diameter, and two 24-inch diameter, transmission mains to the Brockton service system.  The Brockton Reservoir is a supplemental supply (5.51% of total) to Silver Lake and is blended into the system at Woodland Avenue.[1]

31.     Beginning in 2020, the City of Brockton started testing the water for PFAS under the Massachusetts Department of Environmental Protection's guidance.  Testing at that time showed PFAS6[2] levels totaling 28 ppt from a water sample taken at the Brockton Reservoir.

---

[1] The BWD purchased the remaining 6.24% of its water from Aquaria.

[2] The six PFAS are: PFOS, PFOA, PFHxS, PFNA, PFHpA, and PFDA.  MassDEP abbreviates this set of six PFAS as the "PFAS6" and has used them to set a drinking water standard meant to be protective against adverse health effects for all people consuming the water.  *See* https://www.mass.gov/info-details/per-and-polyfluoroalkyl-substances-pfas#:~:text=Drinking%20Water%20Standards%20and%20Health%20Information,-Massachusetts%20PFAS%20Standard&text=The%20six%20PFAS%20are%3A%20PFOS,all%20people%20consuming%20the%20water (*last accessed* on April 17, 2024) (https://perma.cc/89JR-BUPP).

Subsequent testing performed at the Brockton Reservoir reported high levels of PFAS6 at 28 ppt. The City of Brockton also performed water testing on November 18, 2021, showing PFAS6 levels of 35.63 ppt in finished water and 40.33 ppt in raw water at the Brockton Reservoir and the Woodland Avenue Water Treatment Plant.

32.     The City of Brockton took the Brockton Reservoir out of service and is currently purchasing water from the Aquaria Desalination Plant to comply with their water supply demands. While removed from service, upgrades were completed at the Woodland Avenue Water Treatment Plant.  Upgrades included replacing both filter carbons with new granular activated carbon which are designed to reduce PFAS6 from the water.  The City of Brockton is following the guidance and testing requirements of the Massachusetts Department of Environmental Protection as it pertains to PFAS.

33.     **Plaintiff City of Delray Beach ("Delray Beach")** is located in Palm Beach County, Florida and a citizen of the State, which owns and operates a Public Water System serving approximately 68,000 residents with 22,000 service connections. Delray Beach draws water from the east coast Surficial Aquifer, a 75- to 195-feet deep underground aquifer. There are 30 raw water wells located throughout the Delray Beach from which water is drawn and piped to the water treatment plant. The Surficial Aquifer system in Florida includes any otherwise undefined aquifers that are present at land surface. It is made up of mostly unconsolidated sand, shelly sand, and shell. The aquifer thickness is typically less than 50 feet but can range up to 400 feet in Indian River and St. Lucie Counties. Delray Beach is currently operating under a water use permit issued by the South Florida Water Management District. The water use permit allows for the withdrawal of up to 19.1 million gallons per day.

34.    In August 2020, Delray Beach voluntarily started testing for PFAS in its water system. This testing showed PFAS in all of its wells with levels ranging between 25.3 ppt to 92 ppt. Since 2020, the Delray Beach has been committed to regular testing for PFAS and continues to provide transparency of the process to its customers. Their most recent PFAS testing from June 13, 2022, continues to show PFAS contamination.

35.    The Delray Beach has paid an excess of $25,000 for PFAS testing. It is currently working on a project to construct a new water treatment plant. The new water treatment plant is meant to replace or complement the existing aged conventional lime-softening plant and it will have a Nanofiltration system to remove PFAS. Also, it will be designed and constructed to meet all the latest regulatory requirements of the Environmental Protection Agency ("EPA"), the Florida Department of Environmental Protection and the Florida Department of Health. The new water treatment plant is projected to be online in late 2026 at an approximate cost of $100 million.

36.    **Plaintiff City of Freeport ("Freeport")** is a citizen of Illinois, which owns and operates a water system serving approximately 25,000 residents located in and around Freeport. Currently, Freeport's system draws the drinking water it provides to customers from four groundwater wells. Two other wells that used to produce 75% of the city's water have been abandoned due to PFAS contamination.

37.    **Plaintiff City of South Shore ("South Shore")** is a citizen of Kentucky, which provides drinking water to a population of approximately 6,800 with approximately 2,069 residential and commercial customer connections.

38.    South Shore's drinking water system is comprised of eleven wells. South Shore also purchases water from nearby public water suppliers to augment its groundwater well supply.

The system has a total annual flow of 96,008,000 and an average 8,000,000 gallons used per month.

39.     PFAS were first detected in South Shore's wells in February 2020. The highest level of PFOA detected was 72.10 ppt and the highest level of PFOS detected was 248 ppt. All of South Shore's wells were shut down due to PFAS contamination and South Shore now purchases 100% of its drinking water from Portsmouth, Ohio via a temporary water line that is laid across a bridge. South Shore is currently in the design process to make this line permanent by burying it under the Ohio River.

40.     **Plaintiff City of Sioux Falls ("Sioux Falls")** is a municipal corporation and public water provider, existing under the laws of the State of South Dakota, with its primary address at 231 N. Dakota Avenue, Sioux Falls, South Dakota, 57104. Sioux Falls is a citizen of South Dakota. Sioux Falls supplies drinking water to customers in Minnehaha and Lincoln Counties and in the City of Sioux Falls. Sioux Fall's drinking water is obtained in part from groundwater wells that draw from the Big Sioux Aquifer. Sioux Falls has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its wells, piping, distribution system, and water treatment facilities.

41.     At least 20 of Sioux Fall's wells are contaminated with PFOS and PFOA, which is believed to have resulted from firefighting training and response activities by Sioux Fall's fire department.

42.     **Plaintiff Coraopolis Water & Sewer Authority** ("Coraopolis") is a municipal corporation organized pursuant to laws of the Commonwealth of Pennsylvania. Coraopolis is a citizen of Pennsylvania.

43.     Coraopolis operates a Public Water System that draws drinking water from eight groundwater wells located near the Ohio River, and serves 2,574 metered residential, commercial, industrial and municipal accounts in the Borough of Coraopolis and a small portion of Moon Township in western Pennsylvania.

44.     Coraopolis has detected PFAS compounds in sampling from all four of its groundwater wells.

45.     **Plaintiff Dalton Farms Water System ("DFWS")** is currently owned and operated by Dutchess County Water and Wastewater Authority ("DCWWA"), which currently owns and operates 13 water systems (including DFWS), 6 sewer systems, and one water transmission system located within 10 different municipalities, collectively serving over 5,500 residential and commercial customers. The DFWS is a citizen of New York.

46.     The DFWS serves 2,055 residents through 603 service connections. The DFWS operates its own water system that contains four drilled wells on the northerly side of Recreation Road. The DCWWA tested the DFWS wells and results indicated that well #5A has detectable amounts of PFOS that range from ND-8.51 ppt and PFOA that range from 1.8 ppt to 30.5 ppt. These wells are located 1.5 miles from the Beekman Fire House ("BFH").

47.     **Plaintiff Martinsburg Municipal Authority ("Martinsburg")** is a municipal corporation organized pursuant to the Pennsylvania Municipality Authorities Act, 53 Pa C.S.A. §5601, et seq.  Martinsburg is a citizen of Pennsylvania.  Martinsburg operates four groundwater wells that supply drinking water to the community.  Martinsburg has detected PFAS compounds in samples from all four groundwater wells.

48. **Plaintiff Township of Verona ("Verona")** is a citizen of New Jersey, which provides drinking water to a population of approximately 15,000 with approximately 4,179 residential and commercial customer connections.

49. Verona provides drinking water from two wells, both of which have been taken out of service because of PFAS contamination. Prior to the PFAS contamination, Verona supplied most of its water from its own wells and supplemented its supply with water purchased from the Passaic Valley Water Commission. Since the wells were shut down, however, 100% of Verona's drinking water is now purchased from the Passaic Valley Water Commission.

50. PFAS were first detected in Verona's wells in December 2020. The highest level of PFOA detected was 23.3 ppt and the highest level of PFOS detected was 9.11 ppt.

51. **Plaintiff Village of Bridgeport ("Bridgeport")** is a citizen of Ohio, which has a population of approximately 1,500 residents with 1,150 metered accounts. Bridgeport historically utilized five groundwater wells as its drinking water source. However, in recent years, findings of a variety of PFAS chemicals in four of its five wells have resulted in the closure of all five wells forcing Bridgeport to purchase all of its drinking water from City of Martin's Ferry.

52. Bridgeport first became aware of PFAS contamination through testing performed by the State of Ohio in 2020. PFAS were detected in four of those wells (Wells 1-4) with Well 5 yielding no findings. However, Well 5 is too small to rely upon for consistent production of drinking water.

B. **Party Defendants**

53. **Defendant BASF Corporation ("BASF")** is a corporation under the laws of the State of Delaware, with its principal place of business located at 100 Park Avenue, Florham Park, New Jersey 07932. BASF is a citizen of Delaware and New Jersey.

54.     BASF is the successor-in-interest to Ciba. Inc. (f/k/a Ciba Specialty Chemicals Corporation).

55.     Ciba Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFAS, including but not limited to PFOA, and/or its chemical precursors for use in AFFF and other consumer products.

56.     The proposed Class Representatives, individually and on behalf of similarly situated Public Water Systems, seek damages against Defendant BASF as set forth herein relating to the contamination of their water supplies by Defendant's fluorosurfactants containing PFAS.

## GENERAL FACTUAL ALLEGATIONS

### A. PFAS Contamination

57.     PFAS are chemical compounds containing fluorine and carbon.  These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water.  These substances are not naturally occurring and must be manufactured.

58.     PFOA is one of the two most widely studied types of PFAS substances.

59.     PFOA has unique properties that causes it to be: (i) toxic, meaning that it poses serious health risks to humans and animals; (ii) mobile and persistent, meaning that it readily spreads into the environment and does not degrade; and (iii) bioaccumulative and biomagnifying, meaning that it tends to accumulate in organisms, including people, and moves up the food chain.

60.     PFOA easily dissolves in water, and therefore is mobile and easily spreads in the environment. PFOA also readily contaminates soils and leaches from the soil into groundwater, where it can travel significant distances.

61.    PFOA is characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA is thermally, chemically, and biologically stable and resists degradation from light, water, and biological processes.

62.    Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

63.    PFOA bioaccumulates and biomagnifies in numerous ways. First, it is relatively stable once ingested, so that it bioaccumulates in individual organisms, including people, for significant periods of time. Because of this stability, any newly ingested PFOA will be added to any PFOA already present in the body. In humans, PFOA remains in the body for years.

64.    PFOA also biomagnifies up the food chain. This occurs, for example, when humans eat fish that have ingested PFOA.

65.    The chemical structure of PFOA makes it resistant to breakdown or environmental degradation. As a result, it is persistent when released into the environment.

66.    Exposure to PFAS is toxic and poses serious health risks to humans and animals, including cancer in humans.

67.    PFAS are readily absorbed after consumption or inhalation and accumulate primarily in the bloodstream, kidney, and liver.

68.    AFFF can be made without the fluorosurfactants that contain PFOA and/or its precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA and/or its precursor chemicals into the environment.

69.     Defendant was or should have been aware that the fluorosurfactants it designed, manufactured, marketed, distributed, and/or sold would be used in a manner that would foreseeably contaminate Plaintiffs' water supplies, including through the use of AFFF.

70.     Defendant designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed of at, near or within the vicinity of the drinking water supplies of the proposed Class Representatives and proposed Class Members, and they entered the environment, migrated through the soil, sediment, stormwater, surface water, and groundwater, thereby contaminating or threatening to contaminate the drinking water supplies of the proposed Class Representatives and proposed Class Members.

71.     As a direct and proximate result of Defendant's acts and omissions, as alleged in this Class Action Complaint, the respective drinking water supplies of the proposed Class Representatives and proposed Class Members have been contaminated and will continue to be contaminated with PFAS, including PFOA, thereby creating an environmental and public health hazard and requiring treatment and remediation.

72.     As a direct and proximate result of Defendant's acts and omissions, the proposed Class Representatives and proposed Class Members have incurred, and will continue to incur, investigation, treatment, filtration, monitoring, operation and maintenance costs and other damages.

73.     Defendant had, and breached, a duty to minimize the environmental harm caused by its fluorosurfactant products containing PFAS. Defendant also had a duty to provide adequate warnings of the risks of its products to all persons whom its product might foreseeably harm.

B. **The Impact of PFAS on the Drinking Water Supplies of the Proposed Class Representatives and the Proposed Class**

74.    The drinking water supplies of the proposed Class Representatives and the proposed Class have been contaminated with PFAS from Defendant's fluorosurfactants used in products, including AFFF.

75.    PFAS from AFFF products have traveled via surface water, stormwater, groundwater, etc., and have contaminated the drinking water supplies of the proposed Class Representatives and the proposed Class.

76.    The detection and/or presence of PFAS in the drinking water supplies of the proposed Class Representatives and proposed Class Members has resulted, and will continue to result, in significant injuries and damage to the proposed Class Representatives and the proposed Class.

77.    The invasion of the respective properties of the proposed Class Representatives and proposed Class Members with PFAS from AFFF products is recurring—new contamination flows regularly and constantly through the groundwater and into the property each day, resulting in new harm to the property of the proposed Class Representatives and proposed Class Members on each occasion.

78.    Because of the risks that PFAS pose to human health, on March 14, 2023, the EPA announced its proposed national maximum contaminant level ("MCL") of 4 parts per trillion for each of PFOA and PFOS in drinking water and health-based maximum contaminant level goals ("MCLGs") of zero for each of PFOA and PFOS in drinking water.

79.    On April 10, 2024, EPA finalized an MCL of 4 ppt for PFOA and 4 ppt for PFOS in public drinking water supplies.

80.     The injuries to the proposed Class Representatives and proposed Class Members caused by Defendant's conduct constitute an unreasonable interference with, and damage to, their respective properties for which they are entitled to any and all damages provided by law.

## CLASS ACTION ALLEGATIONS

81.     Defendant's unlawful conduct, as set forth herein, caused PFAS from Defendant's fluorosurfactants products to enter the groundwater and surface water, ultimately resulting in the contamination of the drinking water supplies of the proposed Class Representatives and proposed Class Members.

82.     The proposed Class Representatives and proposed Class Members have suffered, and will continue to suffer, property damage because of the presence of PFAS from Defendant's fluorosurfactants products in their drinking water supplies.

83.     The proposed Class Representatives bring this class action on behalf of themselves and all other similarly situated Public Water Systems.

84.     The proposed Class Members are defined as:

> Any Active Public Water System in the United States that has one or more Impacted Water Sources as of May 15, 2024.

85.     The following are specifically excluded as members of the proposed class:

(a) Non-Transient Non-Community Water Systems serving 3,300 or fewer people;

(b) Transient Non-Community Water Systems of any size;

(c) Any Public Water System that is owned by a State government and lacks independent authority to sue and be sued;

(d) Any Public Water System that is owned by the federal government and lacks independent authority to sue and be sued;

(e) Any privately owned well that provides water only to its owner's (or its owner's tenant's) individual household and any other system for the provision of water for human consumption that is not a Public Water System.

86.    As used herein, "Public Water System" means a system for the provision of water to the public for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves at least twenty-five (25) individuals.  As used herein, a "Public Water System" shall include the owner and/or operator of that system and any public entity that is legally responsible for funding (by statute, regulation, other law, or contract), other than a State or the federal government, a Public Water System described in such Paragraph or has authority to bring a claim on behalf of such a Public Water System.

87.    As used herein, "Impacted Water Source" means a Water Source that has a Qualifying Test Result showing a Measurable Concentration of PFAS. A "Qualifying Test Result" means any result of a test conducted by or at the direction of a Class Member or of a federal, state, or local regulatory authority, or any test result reported or provided to the Class Member by a certified laboratory or other Person, that used any state or federal agency-approved or validated analytical method to analyze Drinking Water or water that is to be drawn or collected into a Class Member's Public Water System.  A "Measurable Concentration" means the lower of a concentration equal to or greater than the limit of detection of the analytical method used (regardless of whether that limit is higher than, lower than, or equal to any limit established for any purpose by federal or state law) or one part per trillion (one nanogram per liter).

88.    This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23.

89. <u>Ascertainability</u>. The members of the proposed Class are readily ascertainable without extensive and individualized fact-finding and have been identified as putative Class Members by reference to publicly available information. Each public water provider in the United States is a permitted entity that is regulated by the EPA. The EPA assigns a unique identification number, called a "PWSID," to each public water provider and maintains a centralized database that contains an inventory of all Public Water Systems in America. This database, called the Safe Drinking Water Information System ("SDWIS"), is regularly updated with classifying information about all Public Water Systems as well as administrative contact information. Thus, all Public Water Systems can be readily ascertained based on their registration and respective, system-specific information in the Federal SDWIS database. Class Notice will be delivered to all eligible Public Water Systems via direct and publication notice. Public Water Systems may also identify themselves as Class Members by submitting a Claims Form and providing additional information, including testing data showing PFAS detections.

90. <u>Numerosity</u>. The members of the Class are so numerous that their individual joinder is impracticable. Approximately 5,000 Public Water Systems are estimated to fall within the Class definition. The Class Members are geographically located across the United States, making their joinder even more impracticable.

91. <u>Existence and Predominance of Common Questions of Law and Fact</u>. Common questions of law and fact exist as to all proposed Class Members that predominate over any questions affecting individual Class Members. All proposed Class Members have been subject to the same unlawful conduct of the Defendant and have suffered the same resulting injuries—contamination of their drinking water wells and/or water supplies. Questions of law or fact which are common to the proposed Class Members, as set forth in this Complaint, predominate over

questions affecting individual members because the proposed Class Members are similarly situated victims of Defendant's common course of unlawful conduct. Defendant's conduct similarly harmed all proposed Class Members because Defendant designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants contained in AFFF products that infiltrated the proposed Class Members' drinking water wells and water supplies. In addition, Defendant has no defenses specific to individual Class Members, and its defenses, if any, apply equally to all proposed Class Members. The common legal and factual questions include, but are not limited to, the following:

a. When the Defendant designed, manufactured, and sold fluorosurfactant for use in products that would end up in the environment, including in the AFFF products;

b. Whether Defendant owed a duty to the proposed Class Members to refrain from the conduct that led to the contamination of their drinking water wells and water supplies with Defendant's fluorosurfactants;

c. Whether there is sufficient evidence that Defendant's fluorosurfactants posed/pose a risk of harm to the environment and human health;

d. Whether Defendant knew and/or should have known that its fluorosurfactants contained in the AFFF products posed/pose a risk of harm to the environment and human health;

e. The extent to which Defendant became aware that its fluorosurfactants posed a risk of harm to the environment and human health;

f. Whether Defendant provided adequate warnings about the potential harms associated with Defendant's fluorosurfactants;

g. Whether Defendant provided adequate instructions for the use of its fluorosurfactants;

h. Whether Defendant provided adequate instructions for the disposal of waste generated by Defendant's fluorosurfactants;

i. Whether Defendant made misleading representations or omissions with respect to the environmental and health effects of Defendant's fluorosurfactants;

j.  Whether Defendant's fluorosurfactants were defectively and/or negligently designed;

k.  Whether Defendant owed the proposed Class Members duties, including a duty to warn about the propensity of Defendant's fluorosurfactants to contaminate surface water and groundwater used by Public Water Systems;

l.  Whether Defendant failed to warn about the environmental and health risks posed by Defendant's fluorosurfactants;

m.  Whether Defendant, through its actions and omissions, breached its duties to the proposed Class Members;

n.  Whether Defendant, through its actions and omissions, directly and proximately caused the proposed Class Members' injuries and damages;

o.  Whether Defendant's conduct supports an award of statutory damages; and

p.  Whether the proposed Class Representatives and proposed Class Members are entitled to damages.

92.  The injuries sustained by the proposed Class Representative and proposed Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's misconduct relating to Defendant's fluorosurfactants that now contaminate drinking water supplies across the country.

93.  These questions of law and fact that are common to the proposed Class Representatives and proposed Class Members predominate over any questions affecting them individually.

94.  <u>Typicality</u>. The claims of the proposed Class Representatives are typical of the claims of the proposed Class Members in that the proposed Class Representatives, like the proposed Class Members, own and/or operate Public Water Systems that have been and/or are contaminated with PFAS from Defendant's fluorosurfactants, contained in the AFFF products or otherwise, and have incurred costs or will incur costs to test for and/or remove PFAS from their respective drinking water wells and water supplies.

95.    <u>Adequacy of Representation</u>. The proposed Class Representatives will fairly and adequately protect the interests of the proposed Class Members.  The proposed Class Representatives have retained proposed Class Counsel, all of whom are experienced in highly complex litigation, including litigation involving public entities, widescale environmental damage, class actions and mass torts.  Neither the proposed Class Representatives nor proposed Class Counsel have any adverse or antagonistic interests to those of the proposed Class Members, and they will fairly and adequately protect the interests of the proposed Class Members.  Proposed Class Counsel are unaware of any interests adverse or antagonistic to those of the proposed Class Representatives and the proposed Class Members.

96.    <u>Superiority</u>. A class action is superior to any other theoretically available method for the fair and efficient adjudication of this controversy.  Significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigation of essentially identical issues on a class-wide rather than a repetitive individual basis.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the judicial system, and the issues raised by this action. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  No unusual difficulties are likely to be encountered in the management of this class action, and concentrating the litigation in this centrally located forum is particularly convenient to the parties.

## FIRST CAUSE OF ACTION
## PUBLIC NUISANCE

97.    The proposed Class Representatives reaffirm each and every factual allegation set forth in all preceding paragraphs as if fully restated in this count.

98.    Defendant designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants contained in the AFFF products, thus creating or participating in creating a public nuisance that is harmful to health and obstructs the use of the drinking water supplies of the proposed Class Representatives and proposed Class Members.

99.    The presence of PFAS in Defendant's fluorosurfactants products interferes with the use of the drinking water supplies of the proposed Class Representatives and proposed Class Members.

100.    The presence of PFAS from Defendant's fluorosurfactants in the drinking water supplies of the proposed Class Representatives and proposed Class Members caused and/or continues to cause significant costs, inconvenience and annoyance to the proposed Class Representatives and the proposed Class Members, who are all charged with supplying potable drinking water to residents and businesses in various locations throughout the United States.

101.    The presence of PFAS from Defendant's fluorosurfactants in the drinking water supplies of the proposed Class Representatives and proposed Class Members affects a substantial number of people nationwide who rely upon the water wells and water supplies of the proposed Class Representatives and proposed Class Members for commercial and recreational purposes, and it interferes with the rights of the public at large to clean and safe drinking water resources and environment.

102.    An ordinary person would be reasonably annoyed and/or disturbed by the presence of PFAS from Defendant's fluorosurfactants in public drinking water supplies which endangers human health and degrades water quality.

103.    The seriousness of the environmental and human health risk of PFAS from Defendant's fluorosurfactants products in the drinking water supplies of the proposed Class

Representatives and proposed Class Members far outweighs the social utility, if any, of Defendant's conduct in designing, manufacturing, marketing, distributing and selling fluorosurfactants containing PFAS and concealing the dangers posed to human health and the environment.

104.    The proposed Class Representatives and proposed Class Members have suffered and will continue to suffer this particularized harm which is different from the type of harm suffered by the general public at large, as the proposed Class Representatives and proposed Class Members have incurred and/or will incur substantial costs to remove PFAS from their water supplies.

105.    The proposed Class Representatives and proposed Class Members did not consent to the conduct that resulted in the contamination of their respective drinking water supplies.

106.    Defendant's conduct was a substantial factor in causing the harm to the proposed Class Representatives and proposed Class Members.

107.    Defendant knew or, in the exercise of reasonable care, should have known that the manufacture and sale of fluorosurfactants containing PFAS was causing the type of contamination now found in and around the respective drinking water supplies of the proposed Class Representatives and proposed Class Members.

108.    At all relevant times, Defendant knew or should have known that its fluorosurfactants containing PFAS would contaminate water supplies and are associated with serious illnesses and cancers in humans. Defendant, thus, knew or should have known that PFAS contamination would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of public drinking water supplies.

109.    As a direct and proximate result of Defendant's creation of a public nuisance, the proposed Class Representatives and proposed Class Members have suffered, and continue to suffer, monetary damages to be proven at trial.

110.    Defendant's conduct was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, because Defendant designed, manufactured, distributed, and sold fluorosurfactants containing PFAS knowing that toxic PFAS would be released and would last for centuries.

## SECOND CAUSE OF ACTION
## PRIVATE NUISANCE

111.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

112.    The respective drinking water supplies of the proposed Class Representatives and proposed Class Members have been contaminated by PFAS as a direct and proximate result of the unreasonable acts and omissions of Defendant as set forth herein.

113.    The PFAS contamination caused by Defendant's unreasonable acts and/or omissions has substantially damaged the respective drinking water supplies of the proposed Class Representatives and proposed Class Members, and interfered with the ordinary safety, use, benefit, and enjoyment of their respective drinking water supplies.

114.    At all relevant times, Defendant knew or should have known that PFAS from its fluorosurfactant products would contaminate water supplies and are associated with serious illnesses and cancers in humans. Defendant thus knew, or should have known, that PFAS contamination would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of public drinking water supplies.

115.     As a direct and proximate result of Defendant's creation of a private nuisance, the proposed Class Representatives and proposed Class Members have suffered, and continue to suffer, monetary damages to be proven at trial.

116.     Defendant's conduct was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, because Defendant designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFAS knowing that PFAS would be released, could not be contained, and would last for centuries.

### THIRD CAUSE OF ACTION
### STRICT LIABILITY- DESIGN DEFECT
### CONSUMER EXPECTATION TEST

117.     The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

118.     The proposed Class Representatives and proposed Class Members were harmed by Defendant's fluorosurfactants containing PFAS which were designed, manufactured, marketed, distributed and sold by Defendant, and which were dangerous to an extent beyond that contemplated by the ordinary consumer, defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

119.     The design of Defendant's fluorosurfactant products containing PFAS was defective because the products did not perform as safely as an ordinary consumer would have expected them to perform.

120.     Defendant's fluorosurfactant products containing PFAS did not perform as safely as an ordinary consumer would have expected them to perform when applied, used and/or disposed of as directed, instructed and/or intended and/or when misused in a reasonably foreseeable way.

121. The drinking water supplies of the proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by Defendant's fluorosurfactant products containing PFAS.

122. The failure of Defendant's fluorosurfactant products containing PFAS to perform safely was a substantial factor in causing harm to the drinking water supplies of the proposed Class Representatives and proposed Class Members.

123. Defendant had actual knowledge that its fluorosurfactant products containing PFAS were causing the type of harm suffered by the proposed Class Representatives and proposed Class Members.

124. Defendant knew or should have known that its fluorosurfactant products containing PFAS caused harm even when used as intended, instructed, and normally expected and that no third-party could prevent such harm.

125. Defendant's conduct lacked care and was a departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and, thus, Defendant was negligent.

126. Defendant designed, manufactured, marketed, distributed, and sold its fluorosurfactant products containing PFAS knowing that toxic PFAS would be released, could not be contained, and would last for centuries.

**FOURTH CAUSE OF ACTION**
**STRICT LIABILITY - DESIGN DEFECT**
**RISK-BENEFIT TEST**

127. The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

128.    The proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by Defendant's fluorosurfactant products containing PFAS which were designed, manufactured, marketed, distributed, and sold by Defendant, and which were defectively designed in that their safety risks outweighed their benefits, if any.

129.    The design of Defendant's fluorosurfactant products containing PFAS was a substantial factor in causing harm to the proposed Class Representatives and proposed Class Members.

130.    The gravity of the huge environmental harm resulting from the use of Defendant's fluorosurfactant products containing PFAS was, is, and will be enormous because PFAS contamination is widespread, persistent, and toxic.

131.    The likelihood of this harm was, is, and will continue to be very high because Defendant's fluorosurfactant products containing PFAS were toxic, cannot be contained, and do not readily degrade in the environment.

132.    Defendant knew and/or should have known that its fluorosurfactant products containing PFAS were toxic, could not be contained, and do not readily degrade in the environment.

133.    Defendant's conduct lacked care and was a departure from what reasonably careful companies would do in the same situation to prevent harm to others and the environment, and thus the Defendant was negligent.

134.    Defendant designed, manufactured, marketed, distributed, and sold fluorosurfactant products containing PFAS knowing that toxic PFAS would be released, could not be contained, and would last for centuries, and that these dangers significantly outweighed any benefits of Defendant's fluorosurfactant products containing PFAS.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE - DESIGN DEFECT

135.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

136.    The proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by Defendant's fluorosurfactant products containing PFAS which were designed, manufactured, marketed, distributed, and sold by Defendant, and which were defectively designed in that they were dangerous to an extent beyond that contemplated by the ordinary consumer, and their safety risks outweighed their benefits, if any, and they did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

137.    At all relevant times, Defendant had a duty not to place a defective product into the stream of commerce, meaning that Defendant had a duty not to place into the stream of commerce any product that was unreasonably dangerous.

138.    Defendant breached that duty by designing, marketing, distributing, and selling its fluorosurfactant products containing PFAS which, at all relevant times, were unreasonably dangerous.

139.    Defendant's fluorosurfactant products containing PFAS, that were used in the vicinity of the drinking water supplies of the proposed Class Representatives and/or proposed Class Members, were defective in design and unreasonably dangerous because, among other things:

> a.  Defendant's fluorosurfactant products containing PFAS caused and/or would continue to cause extensive and persistent contamination of groundwater when used in its foreseeable and intended manner;

> b.  Contamination with Defendant's fluorosurfactant products containing PFAS in drinking water poses significant risks to public health and welfare; and

      c. Defendant failed to conduct and/or disclose adequate scientific studies to evaluate the impact of PFAS contamination from its fluorosurfactant products on the environment and human health.

140. At all relevant times, Defendant's fluorosurfactant products containing PFAS were dangerous to an extent beyond that contemplated by the ordinary consumer and posed a foreseeable risk of harm that outweighed the cost to Defendant of measures designed to mitigate that risk.

141. Defendant knew or should have known that at the time of manufacture, that PFAS was not biodegradable and bioaccumulated in fish, wildlife, and humans.

142. As a direct and proximate result of Defendant's negligence, the proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by the contamination of their respective drinking water supplies with PFAS from Defendant's fluorosurfactant products.

143. Upon information and belief, Defendant knew and/or should have known that PFAS in its fluorosurfactant products would result in injury to the proposed Class Representatives and proposed Class Members.

144. Defendant's conduct lacked care and was a departure from what a reasonably careful companies would do in the same situation to prevent harm to others and the environment, and, thus, Defendant was negligent.

145. Defendant designed, manufactured, marketed, distributed, and/ or sold its fluorosurfactant products containing PFAS knowing that PFAS would be released, could not be contained, and would last for centuries.

## SIXTH CAUSE OF ACTION

## STRICT LIABILITY- FAILURE TO WARN

146.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in in the preceding paragraphs.

147.    The proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by Defendant's fluorosurfactant products containing PFAS which were designed, manufactured, marketed, distributed, and/or sold by Defendant, without adequate warning of toxicity, potential human health risks, and environmental hazards.

148.    Defendant's fluorosurfactant products containing PFAS were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

149.    The potential environmental hazard and toxicity risks of Defendant's fluorosurfactant products containing PFAS were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community and/or in light of Defendant's superior knowledge about PFAS at the time of the design, manufacturing, marketing, distribution, and selling of its fluorosurfactant products containing PFAS.

150.    The potential environmental hazard and toxicity risks presented a substantial danger when Defendant's fluorosurfactant products containing PFAS were used and/or disposed of as directed, instructed and/or intended and/or when misused in a reasonably foreseeable way.

151.    Defendant had strict duties not to design, manufacture, market, distribute or sell its fluorosurfactant products containing PFAS without adequate warnings of the potential risks associated with their products, which Defendant knew or should have known resulted from the foreseeable use, storage and/or disposal of its fluorosurfactant products containing PFAS.

152.    Defendant breached these duties by failing to adequately warn or instruct of the potential risks associated with the application, use and disposal of its fluorosurfactant products containing PFAS and the dangers to drinking water supplies that were contaminated with PFAS.

153.    The lack of sufficient instructions or warnings was a direct, proximate and/or substantial factor in causing harm to the drinking water supplies of the proposed Class Representatives and proposed Class Members.

154.    Defendant's conduct lacked care and was a departure from what reasonably careful companies would do in the same situation to prevent harm to others and the environment, and, thus, the Defendant was negligent.

155.    Defendant designed, manufactured, marketed, distributed, and/or sold its fluorosurfactant products containing PFAS knowing that PFAS would be released, could not be contained, and would last for centuries, without warning and/or instruction of these dangers.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE - FAILURE TO WARN**

156.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

157.    The proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by Defendant's fluorosurfactant products containing PFAS which were designed, manufactured, marketed, distributed, and/or sold by Defendant without adequate warning of toxicity, potential human health risks, and environmental hazards.

158.    Defendant's fluorosurfactant products containing PFAS were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

159.    The potential environmental hazard and toxicity risks of Defendant's fluorosurfactant products containing PFAS were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community and/or in light of Defendant's superior knowledge about their fluorosurfactant and PFAS at the time of their development, manufacture, formulation, distribution, sale, transportation and/or use of their fluorourfactant products containing PFAS.

160.    Defendant had a duty to the proposed Class Representatives and proposed Class Members to warn about the potential environmental hazard and toxicity risks associated with Defendant's fluorosurfactant products containing PFAS.

161.    Defendant breached this duty by failing to adequately warn or instruct of the potential risks associated with their fluorosurfactant  products containing PFAS.

162.    Defendant had a duty to the proposed Class Representatives and proposed Class Members to provide sufficient instructions or warnings relating to Defendant's fluorosurfactant products containing PFAS so as to avoid contamination of drinking water wells and water supplies throughout the United States.

163.    Defendant breached this duty by failing to provide sufficient instructions or warnings relating to its fluorosurfactant products containing PFAS so as to avoid contamination of drinking water supplies throughout the United States.

164.    Defendant's breaches were a substantial factor in causing harm to the drinking water supplies of the proposed Class Representatives and proposed Class Members.

165.    Defendant knew or reasonably should have known that users would not realize the dangers associated with Defendant's fluorosurfactant products containing PFAS.

166.    Defendant's conduct lacked care and was a departure from what reasonably careful companies would do in the same situation to prevent harm to others and the environment, and, thus, Defendant was negligent.

167.    Defendant designed, manufactured, marketed, distributed, and/or sold fluorosurfactant products containing PFAS knowing that PFAS would be released, could not be contained, and would last for centuries, without warning and/or instruction of these dangers.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE - FAILURE TO RECALL**

168.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

169.    Defendant's fluorosurfactant products containing PFAS were designed, manufactured, marketed, distributed and sold by Defendant, without adequate warning of toxicity, potential human health risks, and environmental hazards.

170.    Defendant had a duty to use reasonable care to warn or instruct about the risks associated with its fluorosurfactant products containing PFAS.

171.    Defendant breached the duty to use reasonable care by failing to warn or instruct about the risks associated with its fluorosurfactant products containing PFAS.

172.    Defendant had a duty to recall its fluorosurfactant products containing PFAS when it knew or should have known about the risks associated with fluorosurfactant products containing PFAS.

173.    Defendant breached the duty to recall by failing to recall its fluorosurfactant products containing PFAS when it first learned or should have learned about the risks associated with its fluorosurfactant products containing PFAS.

174.    Defendant knew or reasonably should have known that its fluorosurfactant products containing PFAS were dangerous or likely to be dangerous when applied, used and/or disposed of as directed, instructed and/or intended and/or when misused in a reasonably foreseeable way.

175.    At all relevant times, Defendant knew or reasonably should have known that users would not realize the danger associated with its fluorosurfactant products containing PFAS.

176.    At all relevant times, Defendant knew or reasonably should have known of the human health risks and environmental dangers presented by its fluorosurfactant products containing PFAS.

177.    A reasonable developer, manufacturer, formulator, distributor, seller, transporter and/or user of products under the same or similar circumstances would have recalled Defendant's fluorosurfactant products containing PFAS.

178.    The proposed Class Representatives and proposed Class Members were harmed by Defendant's fluorosurfactant products containing PFAS, which have contaminated their drinking water supplies.

179.    Defendant's failure to warn and/or recall its fluorosurfactant products containing PFAS was a substantial factor in causing the harm suffered by the proposed Class Representatives and proposed Class Members.

180.    Defendant's conduct lacked care and was an extreme departure from what reasonably careful companies would do in the same situation to prevent harm to others and the environment, and, thus, Defendant was negligent.

181.    Defendant designed, manufactured, marketed, distributed and sold fluorosurfactant products containing PFAS knowing that PFAS would be released, could not be contained, and would last for centuries, without warning and/or instruction of these dangers.

## NINTH CAUSE OF ACTION
### TRESPASS

182.    The proposed Class Representatives reallege and reaffirm all factual allegations set forth in the preceding paragraphs.

183.    The proposed Class Representatives and proposed Class Members own and/or operate drinking water systems that draw their water from various sources, including groundwater and surface water.

184.    The proposed Class Representatives and proposed Class Members have significant property interests in the waters they appropriate and use, and they also have significant property interests in the groundwaters that supply their drinking water wells.

185.    Defendant intentionally, recklessly, and/or negligently caused PFAS from its fluorosurfactant products to enter the groundwaters, aquifers, and drinking water supplies owned and/or operated by the proposed Class Representatives and proposed Class Members.

186.    The proposed Class Representatives and proposed Class Members did not give permission for the entry of PFAS from Defendant's fluorosurfactant products onto their respective properties.

187.    The proposed Class Representatives and proposed Class Members were, are and will continue to be harmed by PFAS from Defendant's fluorosurfactant products which have contaminated their drinking water supplies.

188.    Defendant's unlawful conduct was a substantial factor in causing the harm that the proposed Class Representatives and proposed Class Members have suffered and/or continue to suffer.

189.    Defendant's conduct relating to its fluorosurfactant products containing PFAS lacked any reasonable care and was an extreme departure from what reasonably careful companies

37

would do in the same situation to prevent harm to others and the environment, and, thus, Defendant was grossly negligent.

190. Defendant's conduct in trespassing on the property of the proposed Class Representatives and proposed Class Members was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, because Defendant designed, manufactured, marketed, distributed and sold its fluorosurfactant products containing PFAS knowing that toxic PFAS would be released, could not be contained, and would last for centuries.

## PRAYER FOR RELIEF

WHEREFORE, the proposed Class Representatives, on behalf of themselves and the proposed Class Members, request that the Court enter an Order or judgment against Defendant, jointly and severally, as follows:

1. Certification of the action as a Class Action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of the proposed Class Representatives as Class Representatives and the proposed Counsel as Class Counsel;

2. Compensatory and/or consequential damages according to proof including, but not limited to:

   a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination from Defendant's fluorosurfactant products on and within the drinking water wells and water supplies of the proposed Class Representatives and the proposed Class Members,

   b. costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination from Defendant's fluorosurfactant products of the drinking water wells and water supplies of the proposed Class Representatives and the proposed Class Members, or, in the alternative, the costs and expenses associated with and related to the removal and disposal of such contamination; and

   c. costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within the drinking water wells and water supplies of the proposed Class Representatives and the proposed Class Members; and

3.      Statutory damages;

4.      Costs, disbursements and attorneys' fees of this lawsuit;

5.      Pre-judgment and post-judgment interest on the monetary relief; and

6.      Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

The proposed Class Representatives demand a trial by jury.


Dated: May 23, 2024

                            Respectfully Submitted,

                            /s/ Michael A. London
                            Michael A. London
                            Douglas and London PC
                            59 Maiden Lane, 6th Floor
                            New York, NY 10038
                            212-566-7500
                            212-566-7501 (fax)
                            mlondon@douglasandlondon.com

                            /s/ Paul J. Napoli
                            Paul J. Napoli
                            Napoli Shkolnik
                            1302 Avenida Ponce de León
                            San Juan, PR 00907
                            Tel: (833) 271-4502
                            Fax: (646) 843-7603
                            pnapoli@nsprlaw.com

/s/ Scott Summy
Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

/s/ Joseph Rice
Joseph Rice
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
P: (843) 216-9000
Fax: 843-216-9440
jrice@motleyrice.com

*Proposed Class Counsel*